# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| JULIA ANDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:11-CV-1730-NAB |
| | ) | |
| ERIC K. SHINSEKI, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Eric Shinseki's, Secretary of the Department of Veteran Affairs, Motion for Summary Judgment. [Doc. 19]. Plaintiff Julia Anderson filed this action alleging retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* and for judicial review of an administrative decision of the United States Merit Systems Protection Board ("MSPB"). Specifically, Anderson alleges that Defendant retaliated against her for initiating an EEO complaint regarding harassment and a hostile work environment based on her race, which resulted in her termination. Anderson also seeks review of the MSPB decision affirming her termination. Defendant seeks summary judgment asserting that Plaintiff cannot show a causal connection between protected EEO activity and the adverse employment action and that substantial evidence supports the MSPB's decision to terminate Anderson's employment. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Doc. 6].

## I.     Factual Background

The Court finds that the following facts are material and undisputed for purposes of Defendant's Motion for Summary Judgment.[1]

Plaintiff was employed by the Department of Veterans Affairs Medical Center in St. Louis, Missouri as a Pharmacy Technician from 2000 to 2009.  On March 9, 2005, Pamela Cameron, Pharmacy Technician Supervisor, issued a Memorandum to Anderson regarding Anderson's failure to request a pharmacist review mailout prescriptions in a timely manner, keeping refrigerated items cool, leaving prescriptions on the counter overnight, a bagging error, and overfilling a machine.

On March 7, 2007, Maureen Telle, then Pharmacy Operations Manager, proposed that Anderson be reprimanded for deliberate refusal to carry out a proper order from her supervisor on two occasions in January and February 2007.  Dr. Laura Kroupa, Associate Chief of Staff, issued the reprimand 10 days later.  On April 12, 2007, Telle placed Anderson on a ninety day Performance Improvement Plan ("PIP").  The PIP stated that Anderson's performance was unacceptable in the areas of Preparing/Filing/Delivering and Customer Service and Performance. The PIP outlined that Anderson's performance deficiencies included (1) placing auxiliary labels that covered parts of the prescription label required by federal law; (2) leaving refrigerated items on the counter for over an hour; (3) placement of multiple patients' medication in one bag;

---

[1] Local Rule 4.01 requires a party opposing a motion for summary judgment to note for all disputed facts the paragraph number from movant's listing of facts and all facts not specifically controverted are admitted.  In this case, Anderson admitted most of defendant's facts "in part," but then included lengthy arguments that were not relevant to the fact at issue.  This is not a proper way to "admit" or "controvert" Defendant's facts.  For example in Defendant's eleventh statement of fact, Defendant simply stated that Anderson's Petition for Review was denied on a certain date.  Anderson's response was "Admit with the following explanation," which then included a lengthy *single spaced* response describing the errors in the decision denying her Petition.  Such argument was unnecessary and completely irrelevant to the fact as stated by the Defendant, which Anderson admitted was true.  Further, the Court also notes that the local rules also require that "all filings, unless otherwise permitted by leave of Court, shall be double spaced typed."  E.D.Mo. L.R. 2.01.

(4) not following the refill process on the ScriptPro machine resulting in an inaccurate count of medication; (5) failing to clean the ScriptPro and/or failure to document the cleaning; (6) overfilling of a machine; and (6) failing to obtain review of prescriptions by pharmacists on three separate occasions.  On July 11, 2007, Anderson received notification that she had successfully completed the PIP.  The letter also stated that if Anderson's performance became unacceptable again in the next twelve months, she was subject to reassignment, demotion, or termination of employment without being given another opportunity to improve.

On June 17, 2008, Dr. Kroupa proposed that Anderson be demoted for unacceptable performance in the areas of Preparing/Filing/Delivering and Customer Service and Performance. The proposed demotion was rescinded on July 24, 2008.  On August 18, 2008, Dr. Gina Michael, Assistant Chief of Staff, proposed that Anderson be suspended for three days due to failure to follow established policy and failure to follow medication process.  On October 15, 2008, Anderson received a one day suspension for the actions described in the August 18, 2008 letter of proposed suspension.

Anderson's direct supervisor, Nancy Hedrick received complaints about Anderson's behavior, attitude, and work performance.[2]  Hedrick documented her personal observations of Anderson's abuse of break periods, failure to perform or properly perform work duties, improper use of the internet, and attitude problems beginning in 2006.  Alan Macke, current Pharmacy Operations Manager, also received complaints[3] about and witnessed Anderson taking unauthorized breaks; leaving 30 callers on hold with a 14 minute wait time while on a personal phone call; not completing prescriptions for mail delivery; and not following various procedures.

---

[2] This undisputed fact is being accepted only to show that Ms. Hedrick received complaints and not to establish the veracity of the complaints.  The written complaints were attached to Hedrick's Declaration.
[3] This undisputed fact is being accepted only to show that Macke, received complaints and not to establish the veracity of the complaints.  The complaints were attached to Macke's Declaration.

On November 6, 2008, Anderson contacted the Department of Veterans Affairs Office of Resolution Management and filed an EEO complaint alleging race discrimination and a hostile work environment based on her race. Anderson requested that the one day suspension and absence without leave ("AWOL") should be rescinded and removed from her records. On November 7, 2008, Anderson complained to Macke about being marked AWOL on November 4, 2008. Macke does not recall Anderson specifically complaining about harassment or discrimination, but remembers that she told him that she was taking the matter to the EEO office.

Pharmacist Mike Kidd began working for the Defendant part-time in June 2008. During his employment with the Defendant, Kidd noticed that Anderson was the only pharmacy technician who loaded medication into the ScriptPro machine without needing or asking him to enter his PIN number. Pharmacy Technicians were required to obtain a pharmacist's approval of their work on the ScriptPro machine, which dispensed medication. The pharmacists "approved" the pharmacy technicians' work by entering a personal PIN number. Kidd initially thought that Anderson may have had higher authority than the other pharmacy technicians and did not suspect that she was misusing a pharmacist's PIN number. Kidd later determined that his assumption about Anderson having a higher authority level was incorrect. On December 8, 2008, Kidd sent Macke an e-mail, which stated, "I noticed when I worked on 12-1-08 that Julia did not ask me to check any ScriptPro cassette refills. Is this proper procedure?" Upon receiving this e-mail Macke spoke with Telle, who was his supervisor. Telle began an investigation into the matter. During the investigation, Anderson admitted that she violated the agency's policy by using Pharmacist Richard Tiburzi's PIN number on multiple occasions. Tiburzi admitted to Macke that he had given Anderson his PIN number, but denied giving it to anyone else. At the time

Kidd e-mailed Macke, he did not know that Anderson had made allegations of discrimination and harassment in November 2008 or participated in any EEO activity.

On December 18, 2008, Medical Center Director, Glen E. Struchtemeyer placed Anderson on paid non-duty status. On January 5, 2009, Dr. Michael issued a letter proposing Anderson's removal from employment. The January 5th letter stated that Anderson's proposed removal was based upon three charges: (1) patient endangerment, (2) intentional falsification of documentation, and (3) failure to comply with policies and procedures. Specifically, Charge 1 alleged that on December 1, 2008 Anderson made three dispensing errors by mislabeling short and long acting insulin and dispensing travoprost instead of latanoprost. Charge 2 alleges that Anderson entered a pharmacist's code to complete processes when the pharmacist was not on duty. Charge 3 alleged that Anderson failed to have a pharmacist check her work, failed to follow leave requesting procedures, and failed to give her supervisor adequate notice that she would be attending a union meeting.

On February 26, 2009, the Defendant, represented by Hedrick, and Anderson entered into a mediation settlement agreement regarding her EEO claims. Anderson and Defendant agreed that Anderson would withdraw her complaint and the agency would remove the AWOL from her record, pay her for forty-five minutes of time previously withheld, enter an annual leave request for November 4, 2008, and be more receptive of process needs and the need to change. On March 2, 2009, Dr. Struchtemeyer signed the settlement agreement, although he claims he does not remember doing so.

On March 4, 2009, Dr. Struchtemeyer issued a letter stating that Anderson was removed from employment effective March 13, 2009. Her removal was based on the charges of patient

endangerment and intentional falsification of documentation, however, he dismissed the charge of failure to comply with policies and procedures.

Anderson timely appealed her March 13, 2009 removal to the MSPB. A hearing was held on July 22, 2009. The administrative judge ("AJ") dismissed the charge of patient endangerment, sustained the charge of intentional falsification of documentation, and affirmed the removal on September 25, 2009. Anderson petitioned the MSPB in Washington D.C. for review of the initial decision affirming her removal. The MSPB in Washington D.C. granted Anderson's request for review and affirmed the AJ's findings that the agency proved its charge nexus, and penalty, but vacated the AJ's findings regarding Anderson's retaliation claim and remanded to the AJ to address whether Anderson had proven a prima facie case of retaliation.

Because the first AJ was no longer with the Board at the time of the remand, a second AJ held hearings on August 17 and August 19, 2010. The second AJ issued a decision on August 25, 2010, affirming Anderson's removal. Anderson again asked for appellate review from the MSPB in Washington, D.C. Anderson's request for review and oral argument was denied on May 18, 2011. Anderson then asked the United States Equal Employment Opportunity Commission ("EEOC") to review the MSPB's decision concerning her retaliation claim. On September 2, 2011, the EEOC issued an opinion concurring with the MSPB's finding of no discrimination. Anderson filed her Complaint in this court on October 5, 2011.

## II. Review of MSPB's Decision

### A. Standard of Review

"Any employee or applicant for employment adversely affected or aggrieved by a final order or decision of the [MSPB] may obtain judicial review of the order or decision." 5 U.S.C. § 7703(a)(1). The MSPB shall be named the respondent in any proceeding unless the employee

seeks review of a final order or decision on the merits on the underlying personnel action or a request for attorney's fees, in which case the agency responsible for taking the personnel action shall be the respondent. 5 U.S.C.§ 7703(a)(2). Any federal employee who has been affected by an action which the employee may appeal to the MSPB and alleges a claim for retaliation under Title VII may seek judicial review in district court. *Kloeckner v. Solis*, 133 S.Ct. 596, 607 (2012); 5 U.S.C. § 7702.

"The district court reviews the discrimination claim de novo and the nondiscrimination claim on the administrative record under 5 U.S.C. § 7703(c)." *Mason v. Frank*, 32 F.3d 315, 317 (8th Cir. 1994). "Judicial review of MSPB decision is narrow in scope." *Jones v. Farm Credit Admin.*, 702 F.2d 160, 162 (8th Cir. 1983). Pursuant to § 7703(c), the court shall review the record and hold unlawful and set aside any agency action, findings, or conclusions found to be "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; (3) or unsupported by substantial evidence." Substantial evidence is the degree of relevant evidence that a reasonable person, considering the record as whole, might accept as adequate proof to support a conclusion, even though other reasonable persons might disagree." 5 C.F.R. § 1201.56. Substantial evidence is more than a scintilla, but less than a preponderance. *Buck v. I.R.S.*, No. 4:06-CV-1285 ERW, 2007 WL 2994445 at *4 (E.D. Mo. Oct. 10, 2007) (citing *Consolidated Edison Co. of New York v. National Labor Relations Board*, 305 U.S. 197, 217 (1938)).

**B.     Discussion**

Using the standards articulated above and for the reasons stated below, the Court finds that there was substantial evidence supporting the MSPB's decisions regarding falsification of documentation and removal.

**1.     Intentional Falsification of Documentation**

Charge 2 alleged that between September 3, 2008 and December 5, 2008, Anderson entered a pharmacist's PIN number to fill the cassettes in the ScriptPro machine when the pharmacist was not on duty.  The dispositive issue is whether substantial evidence supports the decision that the agency proved both elements of the charge with respect to the incidents in question.  *Naekel v. Dep't of Transp.*, 782 F.2d 975, 977 (Fed. Cir. 1986).  For Anderson's actions to constitute making a false statement, the agency must prove by a preponderance of the evidence that Anderson "(i) supplied wrong information and (ii) did so with the intention of defrauding, deceiving, or misleading the agency."  *Haebe v. Dep't. of Justice*, 288 F.3d 1288, 1305 (Fed. Cir. 2002).  Generally, circumstantial evidence must be relied upon to establish intent, because there is rarely direct evidence of intent.  *See Naekel*, 782 F.2d at 978.  There is no direct evidence of intent in this case.  Therefore, the board must consider whether the evidence of record as a whole gave rise to an inference that Anderson possessed the requisite intent at the time she used Dr. Tiburzi's access code to refill the ScriptPro machine.  *Id.*  The agency's burden before the MSPB "remained the same whether the intent was proved directly or derived inferentially from circumstantial evidence."  *Id.*  "An employee's good faith explanation can negate an inference of intent to deceive or mislead the agency."  *Leatherbury v. Dep't of Army*, 524 F.3d 1293, 1300-1301 (Fed. Cir. 2008).

Anderson insists that substantial evidence does not support the ALJ's decision sustaining the charge of intentional falsification, because it was based on circumstantial evidence, was affirmatively denied by her, and uncorroborated by the circumstances. Anderson further contends that the agency failed to prove any elements necessary to sustain the charge.

Anderson testified that the agency used a machine called a ScriptPro machine to dispense medications and the correct medication must be placed in the correct containers for the machine to properly function. Anderson admits that a pharmacist's PIN number was required to re-fill the ScriptPro machine. Tiburzi verbally gave Anderson his PIN number on one occasion after she asked him about re-filling the ScriptPro machine. After that incident, Anderson used Tiburzi's PIN number to refill the ScriptPro machine multiple times. Anderson and Tiburzi testified, however, that there was never a discussion between Anderson and Tiburzi regarding the use of his PIN number. Ms. Anderson also admitted that she used Tiburzi's PIN number in order to avoid the policy that required her to obtain pharmacists' checks of the refills. Anderson testified that it was faster to use Tiburzi's PIN number than actually having him or someone else do the required check of her re-filling. Anderson justifies her actions by stating that Tiburzi gave his PIN number to other employees and that she was specifically authorized to use Tiburzi's PIN number. Tiburzi denied giving his PIN number to any other employee. Telle testified that Tiburzi was not in Anderson's chain of command. Tiburzi was disciplined for giving Anderson his PIN number. Undisputed evidence shows that Anderson only used Tiburzi's PIN number when he was not at work. There is no evidence in the administrative record that anyone ordered Anderson to use Tiburzi or any other pharmacist's PIN number. There is no evidence in the record that any other employee improperly used a pharmacist's PIN number in refilling the ScriptPro machine.

Based on the foregoing undisputed facts, the Court finds that there was substantial evidence to support the ALJ's decision that Anderson's actions met the standard for falsification of documentation. Anderson's self-serving statement that she only intended to do her work and had no intention to defraud, deceive, or mislead is insufficient to overcome other contrary evidence. Anderson knew that she was required to have a pharmacist review her work each time she refilled the ScriptPro machine. The intent to deceive is clearly shown by the fact that Tiburzi never told Anderson that she could use his PIN number in his absence and each time she used his PIN number he was not there. The Court affirms the MSPB's determination that Anderson falsified documentation.

**2.    Removal**

As to the MSPB's affirmance of her removal, the determination of an appropriate penalty is a matter committed to the discretion of the employing agency. *Davis v. U.S. Postal Service*, 487 Fed. App'x 571, 575-576 (Fed. Cir. 2012). Neither the MSPB nor the court has the authority to determine the penalty that the agency should have selected. *Id.* at 576. Instead, the Board must assess whether the agency balanced the relevant factors in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 306-307 (1981) and selected a penalty that is within the bounds of reasonableness. *Douglas* lists twelve factors generally recognized as relevant in considering the appropriateness of a penalty. *Id.* at 305. The *Douglas* factors include the following:

> (1) the nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated;
>
> (2) the employee's job level and type of employment, including supervisory or fiduciary role, contacts with the public, and prominence of the position;

(3) the employee's past disciplinary record;

(4) the employee's past work record including length of service;

(5) the effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence in the employee's ability to perform assigned duties;

(6) consistency of the penalty with those imposed upon other employees for the same or similar offense;

(7) consistency of the penalty with any applicable agency table of penalties;

(8) the notoriety of the offense or its impact upon the reputation of the agency;

(9) the clarity with which the employee was on notice of any rules that were violated in committing the offense, or had been warned about the conduct in question;

(10) potential for the employee's rehabilitation;

(11) mitigating circumstances surrounding the offense such as unusual job tensions, personality problems, mental impairment, harassment, or bad faith, malice or provocation on the part of others involved in the matter; and

(12) the adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others.

*Douglas*, at 305-306. Not all of the *Douglas* factors are pertinent in every case. *Id.* at 306.

The Court normally defers to the administrative judgment unless the penalty exceeds that range of possible punishments specified by statute or regulation, or unless the penalty is so harsh and unconscionably disproportionate to the offense that is amounts to an abuse of discretion. *Id.* at 576. The first AJ noted that the deciding agency official Struchtemeyer indicated that either of the charges standing alone was sufficient to sustain removal, Anderson was disciplined twice within the past two years for failure to follow proper agency procedures, she has shown no

remorse, and she showed little, if any potential for rehabilitation. Because the agency considered and balanced all of the relevant *Douglas* factors, the AJ did not err in finding that the penalty of removal was reasonable. Moreover, based on the administrative record the MSPB did not abuse its discretion in sustaining Anderson's removal for falsification of documentation.

Anderson asserts that the administrative tribunals were denied relevant evidence that others engaged in the same behavior with management's knowledge. Anderson asserts that this "evidence of disparate treatment" is relevant to determine whether her removal was within the bounds of reasonableness. Anderson fails to specifically identify the "relevant evidence" that was denied to the MSPB tribunals. It is unclear whether Anderson is stating that evidence was withheld from the MSPB or that the MSPB failed to consider evidence she presented of disparate treatment.

The Court reviewed the administrative record and finds that the MSPB addressed Anderson's claims that she received disparate treatment. Specifically, during the administrative process, Anderson alleged that other pharmacy technicians used pharmacists' PIN numbers and Tiburzi received a lesser penalty for giving Anderson his PIN number. The first AJ's opinion noted that Tiburzi and Anderson worked in different units and were subject to different supervisory chains. The first AJ's opinion also found that there was no evidence of other technicians using pharmacists' PIN numbers to refill the ScriptPro machine. The second AJ's opinion also noted that there was no evidence presented to support Anderson's bare allegation that that some technicians used other pharmacists' PIN numbers to refill the ScriptPro machine and found the testifying technicians' testimony that they had not done so credible. The second AJ's decision addressed Tiburzi's penalty. Tiburzi received a 30 day suspension without pay for providing Anderson his PIN number. The second AJ noted that Tiburzi had a clean disciplinary

record, was a 20 year employee, and although he gave Anderson his PIN because he was busy, he actually checked the containers to ensure their accuracy. To the contrary, the second AJ noted that Anderson repeatedly falsified the ScriptPro machine and there were no mitigating circumstances explaining her actions. He also found that she had been an eight year employee who had previously been disciplined for similar conduct. Further, Anderson showed no remorse for her actions. The Court finds that Anderson's claims of disparate treatment were properly addressed and resolved before the MSPB.

## III.    Retaliation under Title VII

### A.    Standard for Summary Judgment

"It is familiar law that the function of the Court in passing upon a motion for summary judgment is simply to determine whether there exists in the case a genuine issue as to any material fact which would render a trial necessary." *Young v. Southwestern Bell Telephone Co.*, 309 F.Supp. 475, 476 (E.D. Ark. 1969). "Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The initial burden is placed on the moving party. *City of Mt. Pleasant, Iowa v. Assoc. Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988 ) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on an issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence, he or she must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Herring v. Can. Life Assur. Co.*, 207 F.3d 1026, 1029 (8th Cir. 2000). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Herring*, 207 F.3d at 1029 quoting *Anderson*, 477 U.S. at 248. A party resisting summary judgment has the burden to designate the specific facts that create a triable controversy. *See Crossley v. Georgia-Pacific Corp.*, 355 F.3d 1112, 1114 (8th Cir. 2004). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. *Armour and Co., Inc. v. Inver Grove Heights*, 2 F.3d 276, 279 (8th Cir. 1993). In passing on a motion for summary judgment, it is not the court's role to decide the merits. The court should not weigh evidence or attempt to determine the truth of a matter. Rather, the court must simply determine whether a genuine issue of material fact exists. *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1107 (8th Cir. 2000).

**B.    Discussion**

Title VII prohibits employers from discriminating against any employee for opposing any unlawful employment practice or any employee who has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing. 42 U.S.C. § 2000e-3(a). "The employee may produce direct evidence of discrimination, which is evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder than an illegitimate criterion actually motivated the

adverse employment action." *McCullough v. University of Arkansas for Medical Sciences*, 559

F.3d 855, 860 (8th Cir. 2009). If an employee lacks direct evidence of discrimination, she can

survive summary judgment by showing a genuine dispute for trial under the burden shifting

framework established in *McDonnell Douglas Corp. v. Green*. 411 U.S. 792, 802-805 (1973).

"Under *McDonnell Douglas*, the plaintiff must first establish a prima facie case of

discrimination. If the plaintiff establishes a prima facie case, then the burden of production shifts

to the defendant to articulate a legitimate, non-discriminatory reason for the [employment

action]." *McCullough*, 559 F.3d at 860 (internal citations omitted). "If the employer meets this

burden, then the employee must show that the employer's proffered reason for [terminating her]

is a pretext for unlawful discrimination." *Id.* "At the summary judgment stage, under the 1991

amendments to Title VII, the issue is whether the plaintiff has sufficient evidence that unlawful

discrimination was a motivating factor in the defendant's adverse employment action. If so, then

the presence of additional legitimate motives will not entitle the defendant to summary

judgment." *Id.*

To establish a prima facie case of retaliation under Title VII, Anderson must demonstrate

that (1) she engaged in protected conduct, (2) a reasonable employee would have found her

employer's retaliatory action materially adverse, and (3) the materially adverse action was

causally linked to her protected conduct." *Wilkie v. Department of Health and Human*

*Servs.*,638 F.3d 944, 955 (8th Cir. 2011). Defendant does not dispute that Anderson engaged in

protected activity or that an adverse employment action occurred. Therefore, the issue is

whether Anderson can establish that her removal was causally related to her filing of the EEO

charge.

In this case, Anderson asserts that a causal connection is shown by the close proximity of the decision to the filing of the EEO complaint, management misstatements on material factual issues suggesting pretext, and evidence of a selective and after-the-fact investigation. Anderson contends that pharmacy management was looking for reasons to terminate her, Telle conducted a selective and incomplete investigation into whether others engaged in the same conduct, and Defendant hid relevant evidence of Hedrick's retaliatory animus from the "prior Court" and Anderson.

In this case, Anderson cannot show a causal connection between her EEO activity[4] and her removal. First, it is true that there was approximately a month between the time that Anderson visited the EEO counselor and the investigation into her misconduct occurred. "Generally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation." *Sisk v. Picture People, Inc.*, 669 F.3d 896, 900 (8th Cir. 2012). Absent any additional evidence of causation, a one month interval between filing a complaint and an adverse action is not enough alone to establish a prima facie case. *Smith v. Fairview Ridges Hosp.*, 625 F.3d 1076, 1088 (8th Cir. 2010) (*abrogated* on other grounds by *Torgerson v. City of Rochester*, 643 F.3d 1031, 1058 (8th Cir. 2011). The Court notes that Struchtemeyer signed the EEO settlement agreement, on March 2, 2009, two days prior to signing Anderson's notification of removal. Because the EEO claim was settled with minimal relief granted to Anderson at the time that Struchtemeyer issued the removal letter, the Court finds that the temporal proximity of the settlement and removal does not rise to the level of establishing a prima facie case.

---

[4] Anderson asserts that she filed a formal EEO complaint. As outlined in 29 C.F.R. § 1614.105(a), Anderson's complaint to the EEO was resolved in the informal resolution stage.

Second, it is undisputed that Anderson had several disciplinary actions taken against her before she filed the EEO complaint. "Evidence that the employer has been concerned about a problem before the employee engaged in protected activity undercuts the significance of the temporal proximity." *Hervey v. County of Koochiching*, 527 F.3d 711, 723 (8th Cir. 2008). Anderson states that Macke "threatened" her with disciplinary action regarding the timely completion of filling the ScriptPro machine by the end of her shift in June 2008. Anderson claims Macke's "threats" were the reason she used Tiburzi's PIN number. Third, it is undisputed that the person who initiated the investigation into Anderson's conduct, Kidd, was completely unaware of Anderson's EEO activity.

Fourth, it is also undisputed that there is no evidence that other pharmacy technicians used pharmacists' PIN numbers. Anderson disputes that a valid investigation was done regarding whether multiple pharmacy technicians used pharmacists' PIN numbers. "The appropriate scope of investigation is a business judgment, and shortcomings in an investigation do not by themselves support an inference of discrimination." *Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 979 (8th Cir. 2012). In this case, Tiburzi and Anderson were interviewed and admitted to the conduct. The ScriptPro logs were reviewed and showed that when Tiburzi's PIN number was used in his absence, Anderson was on duty each time. There were no instances where Tiburzi PIN number was used in his absence and Anderson was not on duty. Tiburzi denied giving his PIN number to anyone else. It is not relevant whether Telle and Macke interviewed every pharmacy technician or pharmacist. There would be no need to interview all of the pharmacy technicians and pharmacists, especially if there was no evidence that they had personal knowledge of the behavior and no other evidence indicated their involvement.

Anderson relies upon inadmissible hearsay in an attempt to create a disputed fact regarding whether other pharmacy technicians also used pharmacists' PIN numbers on the ScriptPro machine. Federal Rule of Civil Procedure 56(c)(4) states that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Hearsay is "a statement that a party offers into evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c)(2). "When an affidavit contains an out-of-court statement offered to prove the truth of the statement that is inadmissible hearsay, the statement may not be used to support or defeat a motion for summary judgment." *Jenkins v. Winter*, 540 F.3d 742, 748 (8th Cir. 2008). An affirmation on information and belief is also insufficient. *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1367 (8th Cir. 1983). "[D]eposition testimony must also be admissible to be considered in ruling on a motion for summary judgment." *Brooks v. Tri-Systems, Inc.*, 425 F.3d 1109, 1112 (8th Cir. 2005). In an attempt to establish that other pharmacy technicians used other pharmacists' PIN numbers, Anderson presents the deposition testimony of former pharmacist Keith Worley and the declarations of Anderson and former pharmacy technicians Darrell Marler and Daniel Dittrich.

Worley testified in a deposition that he was in the pharmacy one day and he overhead pharmacy technicians Kim Bunn and Judy Christenson talking. At the time he overhead this conversation, Worley could not physically see Bunn or Christenson, because they were separated by a partition. Worley states he recognized Bunn and Christenson's voices. Worley does not know if anyone else was present. Worley testified that he overheard Bunn tell Christenson, "I just lied and I hope she appreciates it" or something along those lines. Worley states he did not know what Bunn was referring to at the time, but a conversation with Marler later that day made

him believe that they were referring to Bunn's deposition testimony in this case. In particular, Worley says that Marler asked him if he had heard that Bunn lied in her deposition about another pharmacy technician Julie Pesch using pharmacists' PIN numbers and that Bunn told Christenson about the lying. Worley acknowledges that Marler was just repeating what Christenson told him, which was that Bunn had lied for Pesch. Worley's recitation of his gossip session with Marler is clearly multiple level hearsay not based on any personal knowledge.

Next, Marler declared that in late 2008, he found out that Anderson was being terminated for using a pharmacist's PIN number to fill the ScriptPro machine without having a pharmacist check her work. He declares that Christenson told him that Pesch did the same thing that Anderson was being faulted for and that Pesch had told her that she hoped there was not a thorough investigation, because management would find out she had done the same thing. Further, Marler states that Christenson also told him that Bunn admitted to her that Bunn perjured herself to protect Pesch. Marler then "approached" Bunn and asked her if what Christenson told him was true and Bunn "looked down and walked away." Marler also noted that he had been accused of "stalking" and "harassing" Pesch, after documenting complaints about her. Marler alleges no one ever asked him whether he or anyone else had used a pharmacist's PIN number to fill the Scrippro machine without having a pharmacist check their work. Again, this declaration constitutes multiple level hearsay. Marler has not shown any personal knowledge about any of the above allegations he has made and therefore, these allegations are inadmissible.

Dittrich's declaration states that he was never asked whether he or anyone he knew had or were filling the ScriptPro machine without a pharmacist checking their work. He also stated that "it was common knowledge that [Pesch] had been doing this, even though it was against

policy." He also stated that he believed but did not know for certain that Pesch was using pharmacist Margaret Raisch's PIN number. Dittrich's statements are also inadmissible hearsay, because he has not declared that he had personal knowledge that Pesch used Raisch's PIN number.

Finally, Anderson's declaration is also filled with hearsay and unsupported allegations. It is clear that Anderson and Defendant disagree about whether the disciplinary actions taken against her were valid. Anderson believes that she was a model employee and Defendant does not. The issue before the Court, however, is whether Defendant's removal of Anderson was retaliation for her EEO activity. The evidence before the Court does not support that conclusion. Anderson's reliance on declarations and deposition testimony based on multiple level hearsay cannot defeat a motion for summary judgment. *Cronquist v. City of Minneapolis*, 237 F.3d 920, 927 (8th Cir. 2001). "A party's unsupported self-serving allegation[] that her employer's decision was based on retaliation does not establish a genuine issue of material fact." *Jackson v. United Parcel Serv.,Inc.*, 643 F.3d 1081, 1088 (8th Cir. 2011). Because Anderson cannot show a causal connection between her removal and the filing of the EEO complaint, she cannot establish a prima facie case of retaliation.

IV. **Conclusion**

Based on the foregoing, the Court will grant Defendant's Motion for Summary Judgment. Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**. [Doc. 19].

A separate Judgment will accompany this Memorandum and Order.

Dated this 15th day of July, 2013.


    /s/ Nannette A. Baker
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE